KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Michael J. Kump (SBN 100983)
  mkump@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Laura D. Castner (SBN 172362)
  lcastner@kwikalaw.com
808 Wilshire Boulevard, Third Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendant
Shaquille O'Neal

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROBERT ROSS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SHAQUILLE O'NEAL, an individual, MARK STEVENS, an individual, and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. CV 11-06124 JHN (Ex)<br><br>The Hon. Jacqueline H. Nguyen<br><br>**DEFENDANT SHAQUILLE O'NEAL'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: September 19, 2011<br>Time: 2:00 p.m.<br>Place: Courtroom 790 (Roybal Bldg.)<br><br>Trial Date: Not Set<br>Action Filed: July 15, 2011 (Removed on July 26, 2011) |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.  ARGUMENT .................................................................................................... 2

    A.   Section 351 is an Extreme Example of Discrimination Against Out-of-State Residents Unjustified by any Corresponding State Interest. .............................................................................................. 2

    B.   Defendants' Activities in Interstate Commerce Do Not Need to Cause the Alleged Injuries for *Bendix* and its Progeny to Apply. .......... 5

III. CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Abramson v. Brownstein,*
    897 F.2d 389 (9th Cir. 1990)..................................................................1, 2, 5, 8

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,*
    486 U.S. 888 (1988)..................................................................................passim

*Bottineau Farmers Elevator v. Woodward-Clyde Consultants,*
    963 F.2d 1064 (8th Cir. 1992)................................................................................9

*Edwards v. California,*
    314 U.S. 160 (1941)................................................................................................6

*H. P. Hood & Sons, Inc. v. Du Mond,*
    336 U.S. 525 (1949)................................................................................................3

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) (en banc)..................................................................2

*Papenthien v. Papenthien,*
    1995 WL 819033 (S.D. Cal. 1995), *rev'd on other grounds by*
    120 F.3d 1025 (9th Cir. 1997)..........................................................................8, 9

*Rademeyer v. Farris,*
    284 F.3d 833 (8th Cir. 2002)................................................................................9

*Tesar v. Hallas,*
    738 F. Supp. 240 (N.D. Ohio 1990)..............................................................3, 6, 7

*United States v. Lopez,*
    514 U.S. 549 (1995)................................................................................................9

*United States v. Morrison,*
    529 U.S. 598 (2000)................................................................................................9

**STATE CASES**

*Dew v. Appleberry,*
    23 Cal.3d 630 (1979)..............................................................................................5

*Heritage Marketing and Ins. Services, Inc. v. Chrustawka,*
    160 Cal. App. 4th 754 (2008)....................................................................2, 3, 4, 7

DEFENDANT SHAQUILLE O'NEAL'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

**OUT OF STATE CASES**

*State ex rel. Bloomquist v. Schneider,*
    244 S.W. 3d 139 (Mo. 2008) .................................................................... 2

**STATUTES**

Cal. Code Civ. Pro. § 351 ............................................................................. passim

Cal. Code Civ. Pro. § 410.10 ................................................................................ 4

Fed. R. Evid. 201 .................................................................................................. 4

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

## I. INTRODUCTION

Plaintiff's opposition brief effectively confirms that all of the alleged claims are time-barred on the face of the Complaint; that Cal. Code Civ. Pro. § 351 cannot be constitutionally applied to toll any statutes of limitations; and, accordingly, that this action must be dismissed with prejudice as to Defendant Shaquille O'Neal.

First, Plaintiff does not dispute that all of his alleged claims for relief against O'Neal accrued no later than February 11, 2008, and are thus barred on the face of the Complaint by the applicable statutes of limitations (whether two years or three) unless § 351 can be applied to toll those statutes. See Pl.'s Opp. at 2:18-3:3.

Second, Plaintiff does not dispute that O'Neal, who until June of this year was a professional basketball player in the NBA for the last eighteen years, is engaged in interstate commerce. See Pl.'s Opp. at 10:21-23.

Third, Plaintiff cannot dispute that § 351 "forces a nonresident individual engaged in interstate commerce [such as O'Neal] to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in California in perpetuity." *Abramson v. Brownstein*, 897 F.2d 389, 393 (9th Cir. 1990).

Fourth, Plaintiff cannot dispute that California is constitutionally forbidden from imposing this choice on O'Neal: binding authority from both the Supreme Court and the Ninth Circuit have so held. *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 895 (1988); *Abramson*, 897 F.2d at 394.

In light of the foregoing, there is simply no question that this action must be dismissed. As explained below, Plaintiff's arguments that § 351 can be applied to O'Neal do not withstand serious scrutiny. Therefore, O'Neal respectfully requests that this action be dismissed against him with prejudice.

## II. ARGUMENT

### A. Section 351 is an Extreme Example of Discrimination Against Out-of-State Residents Unjustified by any Corresponding State Interest.

In *Abramson v. Brownstein*, the Ninth Circuit held that in light of the Supreme Court's interpretation of the dormant Commerce Clause in *Bendix*, "the California tolling statute [§ 351] is therefore unconstitutional." 897 F.2d at 393; *see also id.* at 394 ("Because the California tolling statute is unconstitutional, … we affirm the district court's dismissal."). The Court's holding was unqualified, and did not leave room for an "as applied" analysis. In the absence of intervening authority from either the Supreme Court or an en banc panel of the Ninth Circuit, that holding is binding on all subsequent panels of the Ninth Circuit and on all district courts in this Circuit. *See Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc).

However, there is no need to get bogged down in an academic argument about whether the Ninth Circuit held that § 351 is facially unconstitutional or whether this Court is still required to conduct an "as applied" analysis. The issue is irrelevant because there is no question whatsoever that, under an as applied analysis, § 351 cannot be constitutionally applied to O'Neal here. "Time and again the Courts have held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of state interests that benefits the former and burdens the latter. This rule is essential to the foundations of the Union." *Heritage Marketing and Ins. Services, Inc. v. Chrustawka*, 160 Cal. App. 4th 754, 762-63 (2008) (holding that § 351 could not be constitutionally applied to out-of-state residents engaged in interstate commerce) (internal punctuation altered; quoting *State ex rel. Bloomquist v. Schneider*, 244 S.W. 3d 139, 142 (Mo. 2008)).

Section 351 is an <u>extreme</u> example of differential treatment between in-state and out-of-state interests, with the former being benefitted and the latter being significantly burdened. Specifically, while California residents engaged in interstate

commerce are entitled to the benefit of all of California's statutes of limitations, non-California residents engaged in interstate commerce are <u>never</u> entitled to those statutes of limitations (unless they move to California and stay there for the statutory period). Thus, California favors its residents by giving them the benefit of all of its statutes of limitations while, at the same time, discriminating against non-California residents by depriving them of any benefit of those same statutes. There is no question that this type of discrimination against out-of-state residents imposes a "significant burden" on interstate commerce—the Supreme Court has told us exactly that. *Bendix*, 486 U.S. at 893 (depriving out-of-state persons of limitations defense imposes a "significant burden" on interstate commerce).

As applied to this case, this "significant burden" is obvious. During the three years between February 11, 2008 and February 11, 2011, O'Neal was engaged in interstate commerce as a professional basketball player in the NBA. Thus, as applied, § 351 would force O'Neal to choose between engaging in interstate commerce, by continuing his employment as a professional basketball player, or relinquishing that right and moving to California for three years to wait for the statutes of limitations to expire. Forcing that choice on O'Neal constitutes a significant burden on interstate commerce. And it is not a choice California is free to force upon him. Under our federal system, O'Neal has a right to engage in interstate commerce, and the State of California "cannot regulate or restrain it." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949).

Although Plaintiff does not dispute that the NBA is engaged in interstate commerce, Plaintiff attempts to minimize the issue by stating that "O'Neal is not the NBA." Pl.'s Opp. at 10:21-22. It is unclear what Plaintiff means by this. In any event, it has long been established that "interstate commerce is affected when persons move between states in the course of ... employment." *Heritage Marketing*, 160 Cal. App. 4th at 762 (quoting *Tesar v. Hallas*, 738 F. Supp. 240, 242 (N.D. Ohio 1990)). "Section 351 penalizes people who move out of state by imposing a

longer statute of limitations on them than on those who remain in the state. The commerce clause protects persons from such restraints on their movements across state lines." *Heritage Marketing*, 160 Cal. App. 4th at 763.

Plaintiff also attempts to minimize the effects on interstate commerce by noting that O'Neal "only" played in 226 NBA games during the relevant period, and thus "would have been engaged in NBA interstate commerce activities for 226 days." Pl.'s Opp. at 10:27-11:2. This argument is factually meritless and legally irrelevant. First, it is a well-known fact that an NBA player does more than just play in games. For example, all of the following facts are generally known in this judicial district and are not subject to reasonable dispute. *See* Fed. R. Evid. 201. An NBA player is required: to travel across the continent throughout a nine-month season to play in NBA games; to stay temporarily in hotels in several cities to play in those games; and to practice and prepare for games on many days when no games are played. Clearly, O'Neal was "engaged in interstate commerce" for much more than just the 226 days during those three years that he appeared in actual games.

Second, and more fundamentally, Plaintiff's argument as to how much time O'Neal spent engaging in interstate commerce is legally irrelevant and misses the point entirely. By requiring O'Neal to choose between his right to engage in interstate commerce and his right to interpose a limitations defense, § 351 constitutes a "significant burden" on such commerce. Simply put, there is no doubt that O'Neal could not have both avoided the tolling of § 351 and engaged in interstate commerce. Thus, § 351 clearly acts as a "significant burden" on interstate commerce.

When these "significant burdens" on interstate commerce are weighed against California's purported "justification" for § 351, there is no question that the statute is "an unreasonable burden on commerce" and therefore void. *Bendix, id.* at 895. Just like Ohio's long-arm statute in *Bendix, id.* at 894, California's long-arm statute would have permitted service on O'Neal throughout the limitations period. *See* Cal.

Code Civ. Pro. § 410.10. Plaintiff does not deny this in his opposition (or offer any explanation as to why he waited so long to file this action). Indeed, as noted in the moving papers, under the unique circumstances of this case, O'Neal could have been easily served personally in California—many of his visits to California are published months in advance with very specific details regarding the times and places he will be. *See* Mot. at 15:18-25. Thus, as applied in this case, the "justification" for § 351 is almost nonexistent.

Regardless, the only theoretical "justification" for California's statute is to "alleviate[ ] any hardship that would result by compelling plaintiff to pursue defendant out of state." *Abramson*, 897 F.2d at 393 (quoting *Dew v. Appleberry*, 23 Cal. 3d 630, 636 (1979)). There can be no question that this justification cannot outweigh the "significant burden" on interstate commerce that § 351 imposes upon out-of-state residents—the Supreme Court has told us exactly that. *Bendix*, 486 U.S. at 894 (fact that "serving foreign corporate defendants may be more arduous than serving domestic corporations" does not justify "significant burden" on commerce imposed by statute depriving foreign persons of limitations defense).

In short, as applied here, Cal. Code Civ. Pro. § 351 is unconstitutional. Accordingly, this case must be dismissed against O'Neal with prejudice.

### B. Defendants' Activities in Interstate Commerce Do Not Need to Cause the Alleged Injuries for *Bendix* and its Progeny to Apply.

In opposition, Plaintiff attempts to avoid dismissal by arguing that there is no "nexus" between O'Neal's involvement in interstate commerce and the alleged injuries and duty-breaches alleged in Plaintiff's Complaint. At the same time, however, Plaintiff asserts that the law "is unclear whether the defendant's interstate commerce activities must cause the claimed breach or injury in order to invalidate the tolling period of section 351." Pl.'s Opp. at 10:11-13 (emphasis added). The law is not unclear, however: the defendants' interstate commercial activities do not need to have caused the alleged breach or injury alleged in the Complaint.

*Bendix* itself belies Plaintiff's argument:

> The State may not withdraw [limitations] defenses on conditions repugnant to the Commerce Clause. Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce. The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain.

*Bendix*, 486 U.S. at 893. Thus, under *Bendix*, a State's tolling statute is subject to "review[ ] under the Commerce Clause" when the statute "denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce." *Id.* Thus, the salient consideration in *Bendix* is whether (a) the "out-of-state persons or corporations [are] engaged in commerce" and (b) whether the State's denial of a limitations defense to such persons "engaged in commerce" is discriminatory and operates as "an impermissible burden on commerce." <u>Nothing</u> in *Bendix* implies that the allegations of the lawsuit must themselves relate to interstate commerce.

Subsequent authority from other courts is also clear on the issue. For example, in *Tesar v. Hallas*, 738 F. Supp. 240 (N.D. Ohio 1990), the district court addressed another Ohio tolling statute (not the statute-at-issue in *Bendix*) that was almost identical to § 351: it provided that statutes of limitations do not run while an individual is not present in the State. *Id.* at 241. "Unlike the corporation in *Bendix*, [defendant] is not alleged to have been engaged in a business causing him frequently to ship goods or to travel himself interstate. Instead, the complaint simply states that he lived and worked in Cleveland for the Plain Dealer, and then he moved to Pennsylvania and began a new job there." *Id.* at 242. Nevertheless, the court did not hesitate to hold that "interstate commerce is affected when persons move between states in the course of or in search for employment." *Id.* ("the movement of persons falls within ... the Commerce Clause," quoting *Edwards v. California*, 314

6
DEFENDANT SHAQUILLE O'NEAL'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

1  U.S. 160, 172 (1941)). The court then held that the statute was unconstitutional as
2  applied to out-of-state persons:

> 3  Following *Bendix*'s holding that requiring foreign
> corporations to submit to the general jurisdiction of Ohio
> 4  courts "is an unreasonable burden on commerce," it seems
> plainly "unreasonable" for persons who have committed
> 5  acts they know might be considered tortious to be held
> hostage until the applicable limitations period expires.
> 6  Persons in that position, or businesses desirous of hiring
> them, would be burdened to a greater degree than *Bendix*'s
> 7  foreign corporations, because Ohio has no procedure that
> permits a person who wishes to move out-of-state to
> 8  register with the state for service purposes.

9  *Id.* at 242.

10     The same reasoning applies here. If one were to accept the allegations of the
11 Complaint as true, and thus that O'Neal knew he committed something potentially
12 tortious on February 11, 2008, application of § 351 to him would have effectively
13 required that he "be held hostage until the applicable limitations period expires," *i.e.*
14 for three years. Such a result would clearly be an unreasonable burden on interstate
15 commerce.

16     Another case expressly rejecting Plaintiff's position that the allegations of the
17 lawsuit must themselves relate to interstate commerce is the California Court of
18 Appeal's decision in *Heritage Marketing and Ins. Services, Inc. v. Chrustawka*, 160
19 Cal. App. 4th 754 (2008). There, Plaintiff sued certain former employees who had
20 moved to Texas and started a competing business several months after their move.
21 *Id.* at 758. The trial court dismissed Plaintiff's complaint as time-barred and held
22 that § 351 could not be constitutionally applied. *Id.* at 759.

23     On appeal, Plaintiff argued that § 351 could be applied because there was a
24 triable issue of fact as to whether Defendants' move implicated interstate commerce.
25 The Court of Appeal <u>rejected</u> the argument. Relying on *Tesar* and several other
26 state and federal cases, the Court held that § 351 could not be constitutionally
27 applied to any non-residents travelling in interstate commerce:
28

> Section 351 penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. The commerce clause protects persons from such restraints on their movements across state lines. By creating disincentives to travel across state lines and imposing costs on those who wish to do so, the statute prevents or limits the exercise of the right to freedom of movement. Applying section 351 under the facts of this case would impose an impermissible burden on interstate commerce as it would force defendants to choose between remaining residents of California until the limitations periods expired or moving out of state and forfeiting the limitations defense, thus remaining subject to suit in California in perpetuity.

*Id.* at 764.

The same reasoning applies here: O'Neal cannot be made to choose between travelling for interstate commerce or retaining a limitations defense that those not travelling in interstate commerce are entitled to plead. Again, the Court's reasoning clearly does <u>not</u> require that the allegations of the Complaint relate to interstate commerce.

Also instructive in this regard is the Southern District of California's decision in *Papenthien v. Papenthien*, 1995 WL 819033 (S.D. Cal. 1995), *rev'd on other grounds by* 120 F.3d 1025 (9th Cir. 1997).[1] There, plaintiff alleged that defendant battered her on several occasions. The statute of limitations ran on those batteries, but the plaintiff argued that the statute could be tolled by § 351. *Id.* at *1. The district court disagreed and rejected plaintiff's "attempts to distinguish *Abramson* by arguing that the allegedly wrongful acts … had no connection with interstate

---

[1] The Ninth Circuit reversed in *Papenthien* because the California Legislature lengthened the statutes of limitations for domestic violence claims after the Southern District of California's judgment. *Papenthien*, 120 F.3d at 1027. Thus, the only issue on appeal was whether the Legislature's lengthening of the statute of limitations was retroactive (and the Court held it was). *Id.* However, the Ninth Circuit did not question the district court's holding that § 351 could not be constitutionally applied.

commerce." *Id.* at *2. Defendant was an airline pilot, which "require[d] him to fly throughout the United States." *Id.* The court, thus, held that § 351 "violates the Commerce Clause [because] it requires a person to choose between traveling out of state for one's job and enjoying the protection of the statute of limitations." *Id.* The same reasoning applies here: § 351 cannot be applied to O'Neal because it would require him to choose between traveling out of state for his job or enjoying the protections of California's statute of limitations. Again, the fact that some of the allegedly tortious conduct of the Complaint might not relate to interstate commerce is irrelevant to that fact.

  These cases (and others) make clear that there is no requirement that the alleged injury in the Complaint must relate to interstate commerce. *See also Rademeyer v. Farris*, 284 F.3d 833, 839 (8th Cir. 2002) (Missouri statute similar to § 351 cannot be constitutionally applied to defendant who moved out of Missouri after alleged tortious conduct; no discussion of whether defendant's move had anything to do with allegedly tortious conduct); *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1074-75 (8th Cir. 1992) (same with respect to North Dakota tolling statute). Thus, this action must be dismissed.[2]

---

[2] Plaintiff's discussion of *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), and their progeny, are irrelevant to the "dormant" Commerce Clause issues here. Pl.'s Opp. at 4-5. Those cases deal with Congress's affirmative power under the Commerce Clause, not with the limitations on a State's legislative powers under the same clause (stated otherwise, *Lopez* and *Morrison* are not dormant Commerce Clause cases). There are no cases from any court suggesting that *Lopez* or *Morrison* somehow call *Bendix* and its progeny into question. This is not surprising, as the analysis of the validity and scope of Congressional power under the Commerce Clause is very, very different from the analysis of the limitations on State legislative power under the dormant Commerce Clause.

## III. CONCLUSION

For the reasons stated, Defendant Shaquille O'Neal respectfully requests that this Court grant his motion and dismiss Plaintiff's Complaint against him with prejudice and without leave to amend.

DATED: September 2, 2011                Respectfully submitted,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP


By: /s/Michael J. Kump
    Michael J. Kump
    Attorneys for Defendant
    Shaquille O'Neal

DEFENDANT SHAQUILLE O'NEAL'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS